**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PCS & Build, LLC,

        Plaintiff,                            Case No. 1:22cv521

        v.                                Judge Michael R. Barrett

Star Building Systems,
a Division of Robertson-Ceco II Corporation,

        Defendant.

## ORDER

This matter is before the Court upon Defendant Star Building Systems' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (Doc. 19). Plaintiff PCS & Build, LLC's has filed a Response in Opposition (Doc. 22) and Defendant filed a Reply (Doc. 23).

### I. BACKGROUND

This case arises out of a construction project located in Hamilton, Ohio. (Doc. 1, PAGEID 1, ¶ 1). The project is known as the Spooky Nook Ohio Sports and Entertainment Complex ("the Project"). (Id., ¶ 2). Plaintiff PCS & Build, LLC is the construction manager of the Project. (Id.) Plaintiff is an Ohio corporation with its principal place of business in Cleveland, Ohio. (Id., ¶ 1). As part of the Project, Plaintiff entered into two purchase orders with Defendant Star Building Systems. (Id., PAGEID 3, ¶ 9). Defendant is a manufacturer of pre-engineered metal building systems. (Id., PAGEID 1, ¶ 3). Defendant is a Texas corporation with its principal place of business in Houston, Texas. (Id.)

While the parties appear to disagree which specific purchase order is at issue, there is no dispute that Defendant agreed to create a metal building system which would be used as a frame for "Building 500" of the Project. (Doc. 1, PAGEID 3, ¶ 10; Doc. 19, PAGEID 141, Neal Norman Aff., ¶ 4).[1] There is also no dispute that the purchase order contained specifications and instructions for Defendant to follow to design and fabricate the steel building system. (Id.) Defendant explains that construction of the components of the frame took place in Texas and Iowa. (PAGEID 141, Neal Norman Aff., ¶ 4(e)). After construction of the components, the parts were shipped to the Project site by a third-party delivery service. (Id.) Plaintiff maintains that in addition to construction of components of the metal structure, Defendant also sent employees or agents to the Project site to perform warranty work and other services on their building systems and participate in inspections of building systems. (Doc. 1, PAGEID 1, ¶ 3). However, Defendant claims that on-site work was only completed on "Building 300," which is not the building structure at issue in this case. (Doc. 23, PAGEID 272).

On March 27, 2021, Building 500 collapsed while Defendant's metal building systems were in the process of being erected. (Doc. 1, PAGEID 3, ¶ 10). Plaintiff alleges that the inspection conducted after the collapse revealed latent defects in the metal building system welds. (Doc. 1, ¶ 18).

Plaintiff brings claims for: (1) breach of contract/breach of express or implied warranty; (2) product liability/Ohio Revised Code § 2307.71(A)(9); and (3) declaratory judgment. (Doc. 1, PAGEID 1, 5, and 7, ¶¶ 4, 25, 32, and 36).

---

[1]Defendant states that the two purchase orders attached to the Complaint are not the purchase order related to Building 500—the building which collapsed—and instead are other structures at the Spooky Nook project site. (Doc. 19, PAGEID 141, Norman Aff., ¶ 4(f)).

In its Motion to Transfer Venue, Defendant argues that pursuant to the forum-selection clause in the purchase orders, this matter should be transferred to the U.S. District Court for the Southern District of Texas, Houston Division.[2]  Plaintiff responds that this forum-selection clause is unenforceable and void pursuant to Ohio law.

## II.    ANALYSIS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Ordinarily, when considering a motion brought under 28 U.S.C. § 1404(a), a district court "must evaluate both the convenience of the parties and various public-interest considerations."  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  However, this analysis changes "when the parties' contract contains a valid forum-selection clause."  *Id*. at 63.  "In such cases, the plaintiff's choice of forum 'merits no weight' and courts consider arguments only under the public-interest factors, treating the private-interest factors as

_____

[2]Each of the purchase orders identified by the parties contain the same forum-selection language:

> Buyer acknowledges, stipulates, and agrees that (i) any and all claims, actions, proceedings or causes of action relating to the validity, performance, interpretation, and/or enforcement hereof shall only be asserted and/or submitted to a court in Houston, Harris County, Texas, and that mandatory venue and jurisdiction for any legal action arising from this PO and/or relating to this PO is only in a court located in Harris County, Texas, (ii) Buyer irrevocably submits itself to the exclusive jurisdiction of the state and federal courts in Houston, Harris, County, Texas, (iii) Buyer irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of exclusive venue of any litigation arising out of or in connection with this PO brought in any such court, and (iv) Buyer irrevocably waives any claims that litigation brought in any such court has been brought in an inconvenient forum."

(Doc. 1-1, PAGEID 44; Doc. 19, PAGEID 174).

'weigh[ing] entirely in favor of the preselected forum.'" *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215 (6th Cir. 2021) (quoting *Atl. Marine*, 571 U.S. at 63-64) (alteration in original).

As the Sixth Circuit has recently reiterated, "federal courts sitting in diversity should apply federal common law – rather than state law – to determine the enforceability of a forum-selection clause." *Lakeside Surfaces,* 16 F.4th at 216 (citing *Wong v. PartyGaming Ltd*., 589 F.3d 821, 830, 833 (6th Cir. 2009)). Furthermore, "[a] forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong*, 589 F.3d at 828 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)); *see also M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 12, 92 S. Ct. 1907, 1914, 32 L. Ed. 2d 513 (1972) ("The choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts."). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d at 828.

To defeat the strong presumption in favor of enforceability, the party opposing the forum selection clause must show that: "(1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state." *Lakeside Surfaces*, 16 F.4th at 219–20 (6th Cir. 2021) (citing *Wong*, 589 F.3d at 828; *Shell v. R.W. Sturge, Ltd*., 55 F.3d 1227, 1229-30 (6th Cir. 1995)). Plaintiff makes two

arguments in this regard.

First, Plaintiff maintains that the forum-selection clause is unenforceable pursuant to the strong public policy set forth in Ohio's "Fairness in Contracting Act" which renders non-Ohio choice of law provisions unenforceable in construction contracts for improvements to real estate located in Ohio.  The statute provides:

> Any provision of a construction contract, agreement, understanding, or specification or other document or documentation that is made a part of a construction contract, subcontract, agreement, or understanding for an improvement, or portion thereof, to real estate in this state that makes the construction contract or subcontract, agreement, or other understanding subject to the laws of another state is void and unenforceable as against public policy.

Ohio Rev. Code § 4113.62 (D)(1).  Under the statute, a "construction contract" means "a contract or agreement for the design, planning, construction, alteration, repair, maintenance, moving, demolition, or excavation of a building, structure, highway, road, appurtenance, or appliance situated on real estate located in this state." Ohio Rev. Code § 4113.62 (G)(5).  However, based on the record before the Court, the Court is unable to conclude that the purchase orders between Plaintiff or Defendant fall within this definition.

Plaintiff does not allege that Defendant was providing construction services under the purchase orders.  In the project notes provided to the Court by Plaintiff, it is clearly stated that "[t]he Builder/Contractor is responsible for all erection of the steel and associated work in compliance with the Metal building Manufacturers drawings."  (Doc. 22-3, PAGEID 205).  Defendant was also not designing the buildings.  Instead, Defendant manufactured the building materials according to specifications provided by Plaintiff.  The project notes state: "The design criteria is supplied by the builder, project

owner, or an Architect and/or Engineer of Record for the overall construction project."
(Doc. 22-3, PAGEID 205).  While Defendant provided a certification from its Manager of
Engineering, this certification was that "materials for the subject structure have been
designed in accordance with the order documents, specifically as shown per the
attached Engineering Design Criteria Sheet."  (Doc. 22-4, PAGEID 207).  Plaintiff points
to the mechanics' lien recorded by Defendant, but the language in the lien is phrased in
general terms and merely states that Plaintiff "furnished certain material or performed
certain labor or work (PRE-ENGINEERED METAL BUILDINGS AND/OR
COMPONENTS) to or for PCS & BUILD, LLC, the prime contractor, in the furtherance
of improvements located on or removed to the land hereinafter described, in pursuance
of a certain contract, with CHAMPION MILL LAND, LLC, the owner, part owner, lessee,
original contractor, subcontractor, or other person, as the case may be . . . "  (Doc. 22-5,
PAGEID 265).  Moreover, Plaintiff has not alleged that the purchase orders were
incorporated into another construction contract or that Defendant was designated as a
sub-contractor in another agreement.  *Cf. Univ. Hosps. Health Sys., Inc. v. Pohl Inc. of
Am.*, No. 1:15 CV 2461, 2016 WL 1389608, at *3 (N.D. Ohio Apr. 7, 2016) ("Based upon
the contract documents attached to the First Amended Complaint, it is clear that the
contract at issue was made a part of a construction contract within the meaning of §
4113.62.").

However, even if the Court were to find that Ohio Revised Code § 4113.62 (D)(1)
is applicable, Plaintiff has not carried its burden of showing that enforcing the forum
selection clause would contravene a strong public policy of the State of Ohio.  The
statute itself provides little explanation in its legislative history, and courts which have

applied the statute have not questioned whether the public policy is "strong." *See Michels Corp. v. Rockies Express Pipeline, L.L.C.*, 34 N.E.3d 160, 167-68 (Ohio Ct. App. 2015) ("Here, our state's public policy was explicitly identified by the legislature and placed into a statutory prohibition: foreign forum selection and choice of law clauses in construction contracts for improvements to Ohio land are 'void and unenforceable as against public policy.' R.C. 4113.62(D). Appellee's suggestion that a different public policy is more rational is an argument for the legislature, not the court, who must apply the law as written"); *Univ. Hospitals Health Systems, Inc. v. Pohl, Inc.*, 2016 WL 1389608, *3 (N.D. Ohio Apr. 7, 2016) (addressing the applicability of § 4113.62 but not whether enforcing the forum selection clause would contravene a strong public policy of the forum state).

However, a number of district courts have concluded that "state statutes which have the effect of limiting venue to courts in that state do not represent a strong public policy interest sufficient to override the federal presumption of validity of forum selection clauses." *Aldridge Elec., Inc. v. Am. Mun. Power, Inc.*, No. 5:16CV0163, 2017 WL 986682, at *3 (W.D. Ky. Mar. 14, 2017) (collecting cases); *see also Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652 (4th Cir. 2010) ("However, a statute alone is not sufficient to establish public policy in forum-selection causes, as doing so would enable States to overrule the very policy adopted by the Supreme Court adopted in *M/S Bremen v. Zapata Off-Shore Co.*, which is to favor the contractual choice of forum."). As one court has explained, these state statutes barring forum selection clauses were passed:

> because large multi-state general contractors were forcing local sub-contractors into them, thus compelling those local sub-contractors to

> resolve disputes at great cost in the large general-contractor's home state.
> *See*, *e.g.*, *Vita Planning and Landscape Architecture, Inc. v. HKS Architects, Inc*., 240 Cal.App.4th 763, 192 Cal.Rptr.3d 838, 847 (2015); Ill. Senate Trans., 2002 Reg. Sess. No. 94, p. 24 ("And apparently what happens is some gigantic, behemoth national companies, sort of in an adhesion-type fashion, thrust this language upon Illinois contractors."). *See also*, Neb. Statement of Intent, 2009 Reg. Sess. L.B. 552, (2009)(stating that the Nebraska Construction Prompt Pay Act, which includes the provision outlawing forum selection clauses in construction contracts, is meant to "address the payment of contractors and subcontractors on construction projects"); Testimony of Richard Peel, 73 Nev. Assembly Comm. Min., (2005)(prohibiting "contractor[s] and subcontractor[s]" from having forum selection clauses in their contracts).

*Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC*, 333 F. Supp. 3d 1179, 1230 (D.N.M. 2018).  These circumstances do not exist in the present case.  Plaintiff is not a local subcontractor bringing suit against a large national general contractor.  Instead, Plaintiff is a contractor who purchased materials from an out-of-state manufacturer.  Based on the allegations in the Complaint, the activity which led to Plaintiff's contract and product liability claims was the manufacture of the metal building system.  According to the documents provided to the Court, this activity took place outside of Ohio.  When presented with these circumstances, the Court finds it difficult to conclude that there is a public policy interest which is sufficient to outweigh the federal presumption of validity of forum selection clauses.  *Accord Oldcastle Precast, Inc. v. Sunesis Const. Co*., No. CIV.A. 5:07-81-JMH, 2007 WL 1655380, at *4 (E.D. Ky. June 6, 2007) ("While the quote in this case was included in a bid for a construction project in Ohio, the products were manufactured entirely in Kentucky and were stored in Kentucky for approximately six weeks. Although the contract may technically fall within Ohio's policy against choice-of-law provisions, the policy does not seem fundamental in this case, where most of the work was done outside of Ohio.").

8

In reaching this conclusion, the Court distinguishes Ohio Revised Code § 4113.62 from the Michigan statute which the Sixth Circuit found to be a strong public policy in *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209 (6th Cir. 2021). Like Ohio Revised Code § 4113.62, the Michigan Franchise Investment Law ("MFIL") "renders 'void and unenforceable' any provision in a franchise agreement 'requiring that . . . litigation be conducted outside this state.'" *Id*. at 220. The Sixth Circuit found that the structure of Michigan's statutory scheme "demonstrates that the MFIL's prohibition on forum-selection clauses is a central part of the protection that Michigan's legislature sought to guarantee to franchisees." *Id*. The Sixth Circuit noted that the statute mandates that the franchisors provide franchisees with a list of the provisions the statute renders void and informing the franchisee that if any of these provisions are in these franchise documents, they are void and cannot be enforced against the franchisee. *Id*. If a franchisor fails to provide such notice, the MFIL gives franchisees a private cause of action for damages or recission. *Id*. In addition, the Sixth Circuit noted that the MFIF narrowly applied to the area of franchise agreements, which would help avoid "slippery-slope concerns that might be present in a case involving a generalized prohibition on forum-selection clauses." *Id*. In contrast, Ohio Revised Code § 4113.62 simply declares portions of construction contracts void and unenforceable as against public policy. This is insufficient to defeat the strong presumption in favor of enforceability of forum-selection clauses.

Turning to Plaintiff's second argument, Plaintiff maintains that a trial in Texas would be "seriously inconvenient" because the Project and potential witnesses are located in Ohio. To defeat the enforcement of a forum-selection clause on this basis,

Plaintiff must show that enforcement of the clause "would be so inconvenient such that its enforcement would be unjust or unreasonable." *Wong*, 589 F.3d at 829 (citing *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 722-23 (6th Cir. 2006). "This finding must be based on more than mere inconvenience of the party seeking to avoid the clause." *Id*. In this vein, the Sixth Circuit has found "that enforcement of a forum-selection clause would not be unreasonable where the opposing party failed to produce any evidence that it was exploited or unfairly treated." *Id*. (citing *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co*., 29 F.3d 1095, 1099 (6th Cir. 1994)).

Plaintiff explains that it has no connection with Texas other than the forum-selection clause. However, Plaintiff knowingly contracted with Defendant, a Texas corporation located in Texas, to manufacture the pre-engineered metal building system. The Court also notes that these parties are two business entities with relatively equal bargaining power. While Plaintiff maintains that none of the potential additional parties involved in the Project would be subject to jurisdiction in Texas, Defendant points out that all work on the welds at issue was performed outside of Ohio and any witnesses who performed work on the welds are located outside of Ohio. Defendant also explains that Plaintiff sent the welds for testing to a lab in Redmond, Washington where they are currently held. Therefore, relevant documents, items, and witnesses are located outside Ohio. Moreover, as the Sixth Circuit has recognized, "[u]nless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991). Based on these circumstances, the Court finds that Plaintiff has not carried its burden of showing that enforcing the forum selection clause in this case would be unjust or unreasonable.

Accordingly, the Court reaches the conclusion that the forum selection clause is enforceable.

The Court now turns to consider whether the public interest factors weigh in favor of denying transfer. *Atl. Marine*, 517 U.S. at 64, 134 S.Ct. 568. The public interest factors include: "(1) the court's interest in judicial economy; (2) docket congestion; (3) local interest in deciding the controversy at home[;] and (4) in diversity cases, the interest of conducting the trial in the forum of the governing law." *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 778 (S.D. Ohio 2022) (citation omitted). While Plaintiff mentions these factors, it does not provide a discussion of the factors in the context of this case. However, the public-interest factors "rarely defeat" transfer motion based on a valid forum-selection clause. *Atl. Marine*, 517 U.S. at 64-65. Moreover, where the parties have agreed to a valid forum-selection clause, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id*. at 62. Based on the record presented to the Court, such extraordinary circumstances do not exist here. Therefore, the Court concludes that Plaintiff has not met its burden of establishing that public-interest considerations weigh against transferring this matter to the Southern District of Texas.

III.    **CONCLUSION**

Based on the foregoing, Defendant Star Building Systems' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) (Doc. 19) is **GRANTED**.  The Clerk is hereby **DIRECTED** to **TRANSFER** this matter to U.S. District Court for the Southern District of Texas, Houston Division.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT